UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TALL SHIP ADVENTURES OF CHICAGO, INC., ) ) ) Plaintiff, ) ) v. ) ) THE S/V WINDY, her engines, tackle, ) appurtenances, etc., *in rem*, and SCOTT ) STAWSKI and HOPE STAWSKI, ) *in personam*, ) ) Defendants. ) | Case No. 1:24-cv-12702<br><br>Hon. Matthew F. Kennelly, District Judge<br><br>**In Admiralty** |

### PLAINTIFF'S MOTION FOR ENTRY OF FINAL JUDGMENT BY DEFAULT

Plaintiff TALL SHIP ADVENTURES OF CHICAGO, INC. ("plaintiff"), by its undersigned attorneys, requests that this Court enter final judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) against *in personam* defendants Scott Stawski and Hope Stawski, jointly and severally, and in support of its motion attaches the Declarations of Bruce L. Randall and plaintiff's attorneys and states:

### FACTUAL AND PROCEDURAL BACKGROUND

The sailing vessel WINDY is a 1996-built 148-foot four-masted Gaff Top Sail Schooner, Official/Hull Number IL2AO207G818, and U.S.C.G. documentation No. 1030835 (hereinafter "WINDY"). ECF No. 1, ¶ 5. On or about January 12, 2022, *in personam* defendants Scott Stawski and Hope Stawski (collectively "the Stawskis"), each individually executed a certain Personal Guaranty Agreement (the "PGA" attached to the Complaint as Exhibit A, ECF No.1-1) of a loan evidenced by a Secured Promissory Note dated April 15, 2022 in the principal sum of $1,200,000

(One Million Two Hundred Thousand Dollars) (the "Note" attached to the Complaint as Exhibit B, ECF No. 1-2) to plaintiff for the purpose of purchasing the WINDY. ECF No. 1, ¶ 8.

On or about April 15, 2022, Windy of Chicago, Ltd. ("WOC"), executed a Preferred Ship Mortgage to plaintiff covering 100% of the WINDY. ECF No. 1, ¶ 10. On July 25, 2023, Scott Stawski, as Treasurer of WOC, and Hope Stawski, as President of WOC, each executed on behalf of WOC a Confirmation and First Amendment of Preferred Ship Mortgage ("PSM" attached to the Complaint as Exhibit C, ECF No. 1-3). *Id*.

WOC defaulted under the terms of the Note by failing to make timely installment payments. ECF No. 1, ¶ 14. By reason of the default, plaintiff elected to enforce the First Amendment of PSM lien in this admiralty action *in rem* against the WINDY, to foreclose on the First Amendment of PSM and to seize, arrest and sell the WINDY to partially satisfy the indebtedness owed under the First Amendment of PSM. *Id*. at ¶ 18.

On March 10, 2025, this Court entered an order authorizing the interlocutory sale of the WINDY and a credit bid by plaintiff at the sale up to roughly $1.4 million. ECF No. 26. On April 21, 2025, licensed auctioneer Zachary Franks conducted the public auction of the WINDY at Navy Pier. ECF No. 41. Bruce L. Randall, on behalf of plaintiff, was the highest bidder at the public auction, with a credit bid of Three Hundred Thousand Dollars ($300,000.00). ECF No. 41. On May 8, 2025, this Court entered an order approving and confirming the sale of the WINDY. ECF No. 49. As of April 15, 2025, there was due and unpaid on the Note the sum of $1,448,173.25. *See* Declaration of Bruce L. Randall, attached hereto as Exhibit A, ¶ 2. As of June 15, 2025, accounting for the sale of the WINDY for the credit bid of $300,000.00 and the principal amount of the Note and all applicable interest and penalties following multiple defaults by WOC, the sum of $1,200,679.45 will remain due and unpaid on the Note. Randall Declaration, ¶ 3. This amount

accounts for the credit bid sale of the WINDY in that $28,963.47 of the $300,000.00 credit bid was applied to interest and penalty interest owed and the remaining $271,036.53 of the $300,000.00 credit bid applied to the principal amount of the Note. *Id*.

Default was entered against the Stawskis on March 10, 2025. ECF No. 25. Pursuant to the PGA, the Stawskis each "absolutely and unconditionally, jointly and severally guarantees to [plaintiff] … the payment of any and all indebtedness arising from or related to," *inter alia,* the purchase of the WINDY. ECF No. 1, ¶ 20 & 1-1, ¶ 1. Therefore, the Stawskis are liable to plaintiff for the sum of $1,200,679.45 that will remain due and unpaid on the Note as of June 15, 2025. Additionally, the PGA requires the Stawskis to "pay all costs and expenses including, without limitation, all court costs and reasonable and customary attorneys' and paralegals' fees and expenses paid or incurred by [plaintiff] in connection with the enforcement of any term or provision of this Guaranty or any action by or against [their company Ham and Cheese Events LLC] or [Scott or Hope Stawski] in connection with this Guaranty, which shall be part of the Guaranteed Obligation." ECF No. 1-1, ¶ 4. Therefore, the Stawskis are liable for the additional costs and expenses incurred by plaintiff in enforcing the PGA via the filing and prosecution of the instant case. *See, e.g., BFG Corp. v. Venture Equip.,* LLC, No. 22-CV-3502, 2023 WL 358787, at *1 (N.D. Ill. Jan. 23, 2023) (Gettleman, D.J.) (court awarding plaintiff full damages requested including attorneys' fees incurred by plaintiff in enforcing its rights against guarantor after guarantor defaulted on the guaranty); *see also First Bank Se., N.A. v. Predco, Inc.*, 951 F.2d 842, 851–853 (7th Cir. 1992) (upholding trial court's awarding of reasonable attorney's fees and expenses where guaranty agreement provided "Guarantor agrees to pay all costs, expenses and fees, including all reasonable attorneys' fees, which may be incurred by Trustee in enforcing or

3

attempting to enforce this guaranty following any default on the part of Guarantor hereunder, whether the same shall be enforced by suit or otherwise").

### Additional Custodianship Costs and Expenses Incurred by Plaintiff

On December 16, 2024, this Court appointed plaintiff as substitute custodian of the WINDY to take effect immediately following the arrest of the WINDY by the U.S. Marshal. ECF No. 10. The U.S. Marshal arrested the WINDY on December 31, 2024. ECF No. 13. Thus, plaintiff's substitute custodianship of the WINDY ran from the arrest date of December 31, 2024 until the sale of the WINDY was approved on May 8, 2025. ECF No. 49.

During its custodianship, plaintiff incurred expenses totaling $73,035.48, as follows:

| Expense | Monthly/Daily | Amount | Total Number of Months/Days | Total Amount Incurred |
|---|---|---|---|---|
| Mooring of the WINDY at Navy Pier | Monthly | $7,926.71 | 4 Months | $31,706.84 |
| Inspections of the WINDY | Daily | $125.00 | 128 days | $16,000.00 |
| Insurance | Daily | $97.88 | 128 days | $12,528.64 |
| Administration | Daily | $100.00 | 128 days | $12,800.00 |
| Sub-Total Custodianship Expenses | | | | $73,035.48 |

Randall Declaration, ¶¶ 4—5.

### Unpaid Crew Wages

Various WINDY crew members have assigned to plaintiff their claims for unpaid wages from employment on the WINDY during WOC's ownership in the amount of $22,447.83. Randall Declaration, ¶¶ 6-9. The unpaid crew members from the Stawski Era had maritime liens upon the WINDY that were higher in priority than plaintiff's maritime lien under the PSM, and thus had to be satisfied in conjunction with plaintiff's maritime lien. *See, e.g., Int'l Paint Co. v. M/V Mission Viking*, 637 F.2d 382, 385 (5th Cir.), *clarified*, 642 F.2d 160 (5th Cir. 1981) (a "preferred ship mortgage has priority over all claims against a vessel except expenses and costs taxed by the court

4

and 'preferred maritime liens.' 46 U.S.C. s 953(b). 'Preferred maritime liens' include liens for 'wages of the crew of the vessel.' 46 U.S.C. s 953(a).")

### Legal Fees

Plaintiff has incurred legal fees enforcing the guarantees from four law firms.

Kozacky Weitzel McGrath, P.C., of Chicago, Illinois are plaintiff's admiralty attorneys engaged to enforce the maritime lien and counsel of record herein. As set forth in the Declaration of Paul J. Kozacky, attached hereto as Exhibit B, plaintiff incurred $93,868.00 in attorneys' fees necessarily, customarily and appropriately to enforce the maritime lien. Plaintiff also necessarily incurred $19,433.98 in costs.

Krieg DeVault LLP of Chicago, Illinois has provided legal services to plaintiff regarding several issues, including preparation and filing of the Confirmation and First Amendment of PSM and advising plaintiff of strategy options for enforcing the PGA following WOC's defaulting on the Note. As set forth in the declaration of Laurie A. Montplaisir, attached hereto as Exhibit C, plaintiff incurred $27,997.00 in attorneys' fees necessarily, customarily and appropriately for provision of these services.

Manning Gross + Massenburg LLP has also provided legal services to plaintiff regarding several issues, including attempts at resolving issues with the Stawskis as an alternative to plaintiff's filing this case, advising plaintiff of strategy options for enforcing the PGA in light of the continuing defaults of various agreements by the Stawskis and companies they owned or were otherwise connected to, and communicating with Scott Stawski regarding the return of certain business and account information to plaintiff. As set forth in the declaration of Alex P. Blair, attached hereto as Exhibit D, plaintiff incurred $27,172.50 in attorneys' fees necessarily, customarily and appropriately for provision of these services.

5

Seese, P.A., of Ft. Lauderdale, Florida was engaged to provide plaintiff with advice and opinions regarding pending and potential bankruptcy actions involving entities owned by the Stawskis (or to which they otherwise had a connection) and the potential impact of same on plaintiff's pursuit of enforcing its maritime lien via a judicial sale of the WINDY. As set forth in the declaration of Michael D. Seese, attached hereto as Exhibit E, plaintiff incurred $ 11,660.00 in attorney's fees necessarily, customarily and appropriately for provision of these services.

### Expenses Incurred by Plaintiff's Secretary

Plaintiff's Secretary, Bruce L. Randall, has incurred the following expenses totaling $1,623.30 in connection with the arrest and auction of the WINDY:

| Date | Expense | Amount |
|---|---|---|
| 12/30/24 | Airfare (travel to Chicago for arrest of the WINDY on 12/31/24) | $567.30 |
| 12/31/24 | Parking (for attendance at arrest of the WINDY) | $13.00 |
| 1/9/25 | Airfare (return travel from Chicago following the arrest of the WINDY) | $531.00 |
| 4/14/25 | Airfare (for travel to Chicago to attend auction of WINDY on 4/21/25) | $512.00 |
| Sub-Total Administrative Expenses | | $1,623.30 |

Randall Declaration, ¶¶ 10-13.

### Conclusion

The Stawskis presently owe plaintiff $1,477,917.54 as follows:

| Category | Amount |
|---|---|
| Promissory Note | $1,200,679.45 |
| Custodianship Expenses | $73,035.48 |
| Unpaid Crew Wages | $22,447.83 |
| Legal Fees | $160,697.50 |
| Legal Costs | $19,433.98 |
| Administrative Expenses | $1,623.30 |
| TOTAL | $1,477,917.54 |

6

This figure does not include property damage suffered by the WINDY during the Stawski Era (for example, painting her hull with housepaint, which will require her to be dry-docked following the sailing season and repainted properly) as those damages have not yet been incurred by plaintiff.

WHEREFORE, for the foregoing reasons, plaintiff TALL SHIP ADVENTURES OF CHICAGO, INC., requests that this Court enter judgment against Scott Stawski and Hope Stawski, jointly and severally, for $1,477,917.54, and any other relief this Court deems appropriate.

Respectfully submitted,

TALL SHIP ADVENTURES OF CHICAGO, INC.

By: /s/     Sean N. Knoll
    One of its attorneys

Paul J. Kozacky (pkozacky@kwmlawyers.com)
Sean N. Knoll (sknoll@kwmlawyers.com)
KOZACKY WEITZEL MCGRATH, P.C.
77 West Wacker Drive, Suite 4500
Chicago, Illinois 60601
Tel: (312) 696-0900